UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA et al., <br> Plaintiffs, <br> v. <br> ABBVIE INC., <br> Defendant. | Case No. 18-cv-06392-JD <br><br> **ORDER RE MOTION TO REMAND** <br> Re: Dkt. No. 47 |

This case was originally filed in Alameda Superior Court, and alleges a campaign of kickbacks and other inducements by defendant AbbVie Inc. to inflate sales of its Humira drug, which is used to treat autoimmune disorders such as arthritis and colitis. *See* Dkt. No. 1-1.[1] The complaint is based on AbbVie's conduct in California with California patients and California healthcare providers. Plaintiffs are the State of California, by and through the California Insurance Commissioner ("Commissioner"), and relator-plaintiff Lazaro Suarez. The complaint states a single claim under the California Insurance Frauds Prevention Act, which prohibits the use of "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits" covered by insurance. Cal. Ins. Code § 1871.7(a) ("IFPA").

AbbVie removed the case to this Court on the argument that it has complete diversity with Suarez and that the State of California should be disregarded as a nominal party for jurisdictional purposes. Dkt. No. 1 at 2-3. Plaintiffs now ask for the matter to be remanded to state court. Dkt. No. 47. The Court finds that the State of California is a real party in interest and that the case was

---

[1] This version of the complaint is the redacted copy attached to the removal petition. It will be used here. The Court will resolve a motion to seal for the complaint and other materials, Dkt. No. 57, in a separate order.

removed improvidently and without jurisdiction. It is remanded to the Superior Court. 28 U.S.C. § 1447(c).

**BACKGROUND**

AbbVie is a biopharmaceutical company incorporated in Delaware and headquartered in Chicago, Illinois. Dkt. No. 1-1 ¶ 31. Suarez is a registered nurse and former AbbVie employee, and has sued as a whistleblower based on his experiences as a "nurse educator" and "patient ambassador" with the company. *Id*. ¶ 23. Suarez lives in Florida and alleges that he helped train AbbVie personnel in California. *Id*.

The State of California and Suarez have sued AbbVie only for its conduct in California. As alleged in the complaint, AbbVie pursued two illicit schemes to pump up the sales of Humira in California. One scheme involved "classic kickbacks" in the form of substantial cash payments, gifts, trips and vacations, meals at "fancy restaurants" and wineries, and other bribes given to California healthcare providers, including providers employed by the University of California. Dkt. No. 1-1 ¶¶ 82-156. While the sufficiency of the complaint is not in question for the remand motion, the detailed kickback allegations are all the more striking in that they feature evidence gleaned from AbbVie's own emails and records, and the testimony of confidential witnesses. *See, e.g.*, *id.* ¶¶ 129-36. The complaint alleges that the kickback scheme succeeded in getting healthcare providers in California to order Humira "far in excess of the amount that they would have prescribed" without the bribes. *Id.* ¶ 1.

The other scheme took the form of AbbVie's "Ambassador Program," which was a network of nurses AbbVie made available at no cost to healthcare providers who prescribed Humira for their patients. *Id*. ¶¶ 48-49. A central theme of the complaint is that AbbVie used the Ambassador Program to start and keep patients on Humira under the guise of providing skilled nursing services to them. The "ambassadors" would develop relationships with doctors and patients to increase sales of Humira by handling insurance authorizations and claims, appealing denials of coverage by insurers, guiding patients to enroll in insurance plans that paid for Humira, and other tactics to ensure coverage of Humira prescriptions for commercially insured patients. *Id*. ¶¶ 52-81. Plaintiffs contend that the Ambassador Program was "wildly successful" and

"dramatically increased the number of prescriptions for Humira that are filled and refilled" in California. *Id*. ¶¶ 54, 61.

Plaintiffs say that these illicit sales practices were particularly pernicious because Humira is an expensive drug with serious potential health hazards. The complaint alleges that Humira is subject to a "boxed warning" condition, which requires AbbVie to state in a bold-print box that Humira is associated with "serious infections and malignancies" such as tuberculosis and T-cell lymphoma. *Id*. ¶¶ 4, 46. The complaint also alleges that AbbVie made over $12 billion in Humira sales in 2017 alone. *Id*. ¶ 44. With respect to California, it alleges that insurers paid approximately $1,290,000,000 to cover 274,000 claims for Humira prescriptions by California patients between 2013 and 2018. *Id*. ¶ 45.

On the basis of these and other factual allegations, the State of California and Suarez have brought a single claim against AbbVie for insurance fraud under the IFPA. Section 1871.7 of the IFPA makes it unlawful to use "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits . . . under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer." Cal. Ins. Code § 1871.7(a). Violations are subject to a "civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim" paid by an insurer. *Id*. § 1871.7(b). Equitable and injunctive relief may also be ordered. *Id*.

The IFPA authorizes the Commissioner to bring an action. *Id*. § 1871.7(d). It also allows for an "interested person" to bring a qui tam action "for the person and for the State of California" and "in the name of the State." *Id*. § 1871.7(e)(1). If a qui tam case is initiated, the Commissioner may intervene to assume the prosecution of the action. *Id*. § 1871.7(e)(4)(A).

That is what happened here. The State of California exercised its right to intervene by and through the Commissioner. Dkt. No. 1-1 ¶¶ 8-10. Suarez is staying on as a relator-plaintiff, but the Commissioner has "primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." Cal. Ins. Code § 1871.7(f)(1).

3

The IFPA provides for an allocation of the civil penalties and assessments plaintiffs recover if they prevail in court or settle favorably with AbbVie. *Id*. § 1871.7(g)(1)(A)(iii). Relator Suarez is entitled to reasonable attorney's fees and costs, and up to 40% of the monetary recovery. *Id*. § 1871.7(g)(1)(A)(iii)(I), (IV). The Commissioner also gets attorney's fees and costs, and at least 60% of the monetary recovery, and possibly more depending on the allocation to the relator. *Id*. § 1871.7(g)(1)(A)(iii)(II), (IV). The money allocated to the Commissioner must be paid to the General Fund of the State of California and used to fund fraud investigations and prevention efforts by the California Department of Justice and Department of Insurance. *Id*. § 1871.7(g)(1)(A)(iv).

## DISCUSSION

### I. LEGAL STANDARD

Diversity jurisdiction arises when a plaintiff sues a citizen of a different state over an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). An out-of-state defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Id.* § 1441(a). A plaintiff may move to remand the action to state court if the case was improperly removed because of a lack of subject matter jurisdiction. *Id.* § 1447(c).

There is a strong presumption against removal, and the removal statute is strictly construed against finding federal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Principles of federalism, comity, and respect for the state courts also counsel strongly in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). The defendant always "bears the burden of overcoming the 'strong presumption against removal jurisdiction.'" *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (quoting *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010)). Any doubt about removal weighs in favor of remand. *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014).

## II. CALIFORNIA IS A REAL PARTY IN INTEREST

The parties do not dispute that AbbVie and Suarez are citizens of different states or that the amount in controversy exceeds the statutory threshold. The crucial issue for the remand motion is whether the State of California is a real party to this action for jurisdictional purposes. If California is an interested party with a genuine stake in the lawsuit, then complete diversity is lacking because a state cannot be a citizen of itself. *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973); *see also Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) ("[N]either a state nor a state agency can be a party to a diversity action.") (internal quotation omitted).

The parties rely heavily on cases under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), to address the question of California's party status. But the IFPA and FCA are different statutes. One of the differences is that the goal of the FCA is to recover funds fraudulently obtained directly from the government. In FCA cases, the government itself is the direct, and only, victim. In contrast, the direct victims under the IFPA are the insurers who pay out on fraudulent claims or coverage, and the insureds who pay inflated premiums to cover the cost of the fraud. *See People ex rel. Allstate Ins. Co. v. Weitzman*, 107 Cal. App. 4th 534, 561-62 (2003). Consequently, the FCA cases are of only approximate help in resolving the issue of jurisdiction here.

The better approach to determining California's stake in this case is to understand its role under the plain language of the IFPA. State law determines the "interest California has in this litigation pursuant to its laws." *Lucent*, 642 F.3d at 738. If the IFPA establishes a "'substantial state interest' separate and distinct from the relief sought on behalf of the individual," then California is the real party in interest. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (quoting *Lucent*, 642 F.3d at 739)).

The text of the IFPA leaves no doubt that California has a well-defined and tangible interest in eliminating insurance fraud that makes it a real party in this case and not a mere bystander. As the California Court of Appeal has recounted, the IFPA was enacted in 1993 to combat fraudulent claims on the state workers' compensation system. *Weitzman*, 107 Cal. App.

4th at 547. Subsequent amendments expanded the scope of the IFPA to cover insurance fraud in any domain where it might occur. *Id.* at 548-49. This includes health insurance fraud. Cal. Ins. Code § 1871(h). The State of California has previously pursued IFPA claims against drug manufacturers such as Bristol-Myers Squibb Co. for using kickbacks and other practices to inflate prescriptions, much like the conduct AbbVie is sued for here. *State ex rel. Wilson v. Super. Ct.*, 227 Cal. App. 4th 579, 586-87 (2014).

Whistleblowers are a key component in effecting the purposes of the IFPA. They are essential for providing the inside evidence of insurance fraud that the government typically would not be able to access or act on. *Id.* at 596-97. The IFPA invites whistleblowers to step forward "with information uniquely in their possession and to thus aid the Government in [ferreting] out fraud." *Id.* at 596 n.18 (internal quotation omitted); *see also People ex. rel. Strathmann v. Acacia Research Corp.*, 210 Cal. App. 4th 487, 502 (2012).

California's interest in defeating insurance fraud is substantial in that fraudulent claims can impose extraordinary costs on insurers and insureds through wrongful conduct that is largely hidden from plain view. *See, e.g.*, Cal. Ins. Code § 1871(h) (legislative finding of "billions of dollars annually" in costs from health insurance fraud); *Weitzman*, 107 Cal. App. 4th at 548. California's interest is immediate and tangible because the state stands to recover significant amounts of money in civil penalties and assessments that are expressly earmarked by the IFPA for use in government insurance fraud investigations. Cal. Ins. Code § 1871.7(g)(1)(A)(iv). This allows California to "fight insurance fraud, without creating expensive new bureaucracies and breaking the bank." *Weitzman*, 107 Cal. App. 4th at 548; *see also Strathmann*, 210 Cal. App. 4th at 504.

This case effectuates the IFPA's goals. It is an enforcement action by the State of California against a drug manufacturer that is alleged to have engaged in pervasive insurance fraud in California through illicit schemes intended to generate insurance claims and coverage for Humira prescriptions. If California prevails on the merits, it stands to recover from AbbVie tens of millions of dollars, or more, in civil penalties and potentially trebled claim-based assessments, along with attorney's fees and costs.

By any measure, these stakes make California a real party in interest in this case. It would not go too far to say that California is the only real party in interest here. As a relator under the IFPA, Suarez is suing in the name of the state and has no personal claim or right to vindicate, and no possibility of recovering personal damages for himself. *Strathmann*, 210 Cal. App. 4th at 500-01. The control of the litigation is in the hands of the Commissioner, not Suarez. Cal. Ins. Code § 1871.7(f)(1). Suarez's potential recovery consists solely of a "bounty" that "is analogous to a lawyer's contingent fee." *Strathmann*, 210 Cal. App. 4th at 502. The fact that Suarez will receive a portion of the civil penalties the State of California recovers from AbbVie does not detract from or otherwise negate California's real and tangible interest in the case. *Id*. at 501-02; *see also Nevada*, 672 F.3d at 671.

The conclusion that California is the real party is consonant with state court case law. In *Strathmann*, the California Court of Appeal strongly signaled that the State of California is always the real party in interest in qui tam actions under the IFPA. *Strathmann*, 210 Cal. App. 4th. at 500-01. The court's discussion of the issue occurred in the course of deciding whether a public interest exception barring a motion to strike under the California anti-SLAPP statute applied to an IFPA relator plaintiff. *Id*. at 491-92. The court found that it did because the relator stands in the shoes of the government. *Id*. at 500-01. There is no question that this analysis was an essential part of the court's holding and not dicta, but because the court was directly addressing the anti-SLAPP statute and not Section 1871.7, its observations are best treated as a powerful indicator but not quite dispositive here.

AbbVie does not present any good reason to marginalize the State of California as a nominal player. It relies heavily on *Lucent* and *Missouri Railway*, a Supreme Court case of an older vintage, for the proposition that "general government interests" in protecting the health and welfare of its citizens are not substantial enough to make a state a real party in interest for diversity jurisdiction purposes. *See* Dkt. No. 1 at 7-11; Dkt. No. 55 at 8-9; *Mo., Kan. & Tex. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 60 (1901) ("*Missouri Railway*"); *Lucent*, 642 F.3d at 738-39. That is without a doubt true, but AbbVie fails to account for the plain language of the IFPA and the specific and tangible state interests it embodies, which are far removed from a general

7

concern about good government that was found to be insufficient for jurisdiction in other cases. AbbVie's reliance on *Missouri Railway* is further misplaced in light of the fact that, unlike here, the State of Missouri was not a party of record and had no tangible stake in the outcome of the case. *Missouri Railway*, 183 U.S. at 61.

*Lucent* is even farther afield in that it involved a claim for employment discrimination by a single individual under the California Fair Employment and Housing Act ("FEHA"). *Lucent*, 642 F.3d at 735-36. Although the state Department of Fair Employment and Housing filed the case on behalf of the individual, our circuit held that the FEHA expressed only a general governmental interest in fair employment and that all the meaningful relief available in court would go to the individual, not the state. *Id*. at 738-39. As the prior discussion demonstrates, neither condition is present in this IFPA action.

AbbVie's other arguments are equally unavailing. It points to *Bates v. Mortgage Electronic Registration System, Inc.*, 694 F.3d 1076 (9th Cir. 2012), to say that the state is not necessarily the real party in interest in every qui tam action. Dkt. No. 55 at 3. Maybe so, but this case is brought under the California IFPA, which is different from the federal or state FCA, and in any event the *Bates* relator filed a complaint on behalf of "the Counties" of California, not the state itself. *Bates*, 694 F.3d at 1080.

AbbVie's emphasis on an unpublished memorandum in *California ex rel. TIG Insurance Co. v. Culpepper*, 720 F. App'x 884 (9th Cir. 2018), is particularly questionable. *See* Dkt. No. 55 at 1, 6. In that case, an insurance company sued the defendant in state court under the IFPA for fraudulently obtaining a workers' compensation award. The defendant removed the action on diversity jurisdiction to federal district court. *Culpepper*, 720 F. App'x at 884. The memorandum addressed a possible bar to the district court proceedings under the California Labor Code, and concluded that the code did not block the IFPA. *Id*. at 884-85. Neither removal nor diversity jurisdiction were challenged in the appeal, and the State of California was not a direct participant in the case.

AbbVie says "*Culpepper* confirms that federal courts can exercise diversity jurisdiction in IFPA cases" and that the same should be true here. Dkt. No. 55 at 6. The contention is

1 unpersuasive for two reasons. To start, even if it were accepted without question that diversity jurisdiction with respect to the IFPA "can" be found, nothing in *Culpepper* says it "must" be found, particularly in the factual circumstances here where the State of California is a named plaintiff with a substantial interest at stake and control of the litigation.

More problematically for AbbVie, its interpretation of *Culpepper* is not based on anything actually said in the memorandum. Instead, AbbVie relies on what the circuit panel *did not* say or do. Since the circuit panel did not address diversity or dismiss the case *sua sponte* for lack of jurisdiction, AbbVie posits that it must have affirmatively found that diversity jurisdiction was proper. *Id*. In effect, AbbVie interprets the negative space in *Culpepper* to signal that diversity jurisdiction is proper over IFPA actions irrespective of the role of the state.

Finding judicial holdings in the ether is more spiritualism than sound legal argument. Common sense advises that *Culpepper* did not address diversity jurisdiction because the parties never said a word about it. Subsequent developments in the litigation validate this obvious explanation. Several months after the appeal, the *Culpepper* parties jointly filed a stipulation to remand the case to state court. *California ex rel. TIG Ins. Co. v. Culpepper*, No. 8:16-cv-01555-CJC-JCG (C.D. Cal. Feb. 6, 2019), Dkt. No. 40. The parties acknowledged that "[a]t the time of removal, the parties were unaware of legal authority establishing that the Court lacks jurisdiction" in light of the state's interest in an IFPA action. *Id*. at 2. The district court immediately remanded the case to the Superior Court. *Id*., Dkt. No. 41. This course of events puts to rest any possible theory that *Culpepper* stands for a stealth approval of diversity jurisdiction here.

AbbVie's suggestion that the state is not really a party here because it is acting through the Commissioner is also untenable. The state is the named plaintiff; it holds the interests conferred by the IFPA and will hold any monetary recovery that is awarded. The Commissioner is the state's living and breathing representative for the practical purpose of handling the litigation. *See* Cal. Ins. Code § 1871.7(e)(1). AbbVie does not cite any meaningful authority to indicate that this arrangement in any way negates the state's role in this case.

As a closing observation, AbbVie's complaints about how Suarez participated in similar proceedings in another court are of no consequence. Suarez is perfectly free to choose a litigation

forum, *Hansen*, 902 F.3d at 1056, and AbbVie has not proffered any evidence of untoward gamesmanship or abusive litigation tactics.  Even if it had, which is not the case, diversity jurisdiction is not granted as a sanction against an allegedly wayward party.

**CONCLUSION**

This action was removed improvidently and without jurisdiction, and is remanded to the Superior Court of California for the County of Alameda.  28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

Dated: July 25, 2019

JAMES DONATO
United States District Judge